of the corporation. The option to purchase the building was an opportunity which belonged to him in his individual capacity, rather than in his official capacity. There was substantial evidence to support the trial court's conclusion that Newfeld, Sol Schultz, and Harry Schultz did not usurp a corporate opportunity. Corporation's first point is denied.

■ In its second point, corporation alleges that the trial court erred in finding that Lawrence Newfeld received an unconditional assignment of the lease. Corporation asserts that Newfeld received only a security interest in the lease, with the result that the option to purchase the building remained with the corporation and did not pass to Newfeld unless and until the corporation defaulted on its obligation to pay the rent.

A review of the language of the instrument executed in conjunction with the lease assignment negates corporation's claim. A.Y. Schultz and Sol Schultz, as agents of the corporation, signed a document entitled "Bill of Sale." The agreement stated that corporation secured payment of its note "by assigning to [Newfeld] full title to our lease ... surrendering to him all provisions and benefits of the lease." This language clearly indicates that the assignment of the lease was outright and unconditional, and was not intended to convey to Newfeld only a security interest in the loan.

The trial court recognized the significance of the corporation's assigning Newfeld the option to purchase. At the close of all the evidence, the court opined:

Why in the world would Mr. Newfeld, who only became a stockholder as a result of being an employee of the company for a long time—who owned a very, very minimal amount—why would he and his wife take a second mortgage on their home to loan money to a corporation, where the attorney for the creditors al-

ready had three people ready to go into bankruptcy at any time, and where it was about to be thrown out on the street, unless there was something given to him?

And that something was the option to buy the building. . . .

There was ample evidence to support the trial court's determination that the assignment of the lease was unconditional. Corporation's second point is denied.

In view of our holding, we need not address corporation's third point which challenges the trial court's holding that the corporation was not entitled to equitable relief because of the unclean hands of A.Y. Schultz.

The judgment of the trial court is affirmed.[3]

PUDLOWSKI, P.J., and KAROHL, J., concur.

Michael M. MEEKS, Plaintiff-Appellant,

v.

STATE of Missouri, Respondent-Defendant.

No. 51683.

Missouri Court of Appeals, Eastern District, Division Three.

March 10, 1987.

Motion for Rehearing and/or Transfer Denied April 9, 1987.

Application to Transfer Denied May 19, 1987.

---

**3.** *See State ex rel. Schultz v. Schultz,* 710 S.W.2d 507 (Mo.App.1986) for other litigation involving the same corporation. In that opinion we observed:

The internecine warfare involving this closely held family corporation amply demonstrates a deep and continuing animosity between the family members. *There can be no doubt that*

*the litigation it has produced is of little benefit to the corporation.* But so long as the animosity exists and the two factions continue in full battle array, each side will find itself bound by the strictures of the corporate law of this state.

*Id.* at 509 (emphasis added).

Dorothy Hirzy, St. Louis, for plaintiff-appellant.

William L. Webster, Atty. Gen., Kurt A. Hentz, Asst. Atty. Gen., Jefferson City, for respondent-defendant.

## ORDER

PER CURIAM.

Movant, Michael M. Meeks, appeals from the denial of his Rule 27.26 motion. Affirmed. Rule 84.16(b).

**STATE of Missouri, ex rel. James BROWN, Appellant,**

v.

**CITY OF O'FALLON, Respondent.**

Nos. 51884, 51885.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 10, 1987.

Motion for Rehearing and/or
Transfer Denied
April 9, 1987.

Application to Transfer Denied
May 19, 1987.

Michael A. Turken, St. Charles, for appellant.

Louis S. Czech, Clayton, for respondent.

PUDLOWSKI, Judge.

The O'Fallon, Missouri Board of Aldermen, [Board], voted seven to one to remove Mayor James Brown from his office. Reviewing the proceedings in accordance with Chapter 536 of the Revised Statutes of Missouri, the Circuit Court of St. Charles County entered judgment affirming the Board's action and dissolving a temporary